# Moyer *v.* Berks & Dauphin Turnpike Road, Appellant.

*Turnpike roads—Inquisition as to repair—Disinterested freeholders—Qualification of freeholders.*

Where, in a proceeding under the Act of March 2, 1805, 4 Sm. Laws, 216, to determine whether a turnpike road is out of repair and to stop collection of tolls thereon, it appears that the constable had duly returned under oath, that he had summoned three disinterested freeholders, and the company merely enters a general objection to the freeholders without stating any cause for challenge or offering to produce evidence to support it, and the justice overrules the objection, the company will not, at the second meeting, after the inquisition has been organized, be permitted to examine the freeholders as to their interest and competency.

Argued Oct. 27, 1913. Appeal, No. 238, Oct. T., 1912, by defendant, from order of C. P. Lebanon Co., June T., 1911, No. 231, overruling exceptions to inquisition in case of Frank R. Moyer v. The President and Managers and Company of the Berks & Dauphin Turnpike Road. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to inquisitions.

The material exceptions were as follows:

5. The record shows that the defendant by its attorney at the next meeting, April 7, 1911, objected that the appointed freeholders were not such as required by the act of assembly and that the justice overruled the objection. The said matters should have been inquired into and passed upon by the inquisition.

6. The record shows that counsel for the defendant company, on April 7, 1911, requested the permission to examine the alleged freeholders as to their competency, that is, as to their being freeholders, which was objected to by counsel for the plaintiff, the justice sustaining the objection.

The defendant had a right to examine the alleged freeholders as to their competency, that is, to their being freeholders, and it was error in the justice to undertake to refuse to allow such examination.

7. The record shows that counsel for the defendant company, on April 7, 1911, requested the permission to examine the freeholders as to their interest.

The statute requires that the freeholders be disinterested, and the defendant had a right to examine them as to their interest and it was error in the justice to refuse it.

8. The matter of refusing or allowing an examination of the alleged freeholders as to their interest and competency, was one not to be decided by the justice but by the inquest, and it was error in the justice to arrogate to himself the right solely to pass upon such question.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in overruling exceptions to inquisitions.

*Grant Weidman* and *Cyrus G. Derr*, for appellant, cited: Frankford & Bristol Turnpike Road, 10 Phila. 59; Comfort v. Mosser, 121 Pa. 455.

*Eugene D. Siefrist*, for appellee, cited: Wenrick v. Hall, 11 S. &. R. 153; Com. v. Evans, 212 Pa. 369; Eakman v. Sheaffer, 48 Pa. 176.

OPINION BY PORTER, J., April 20, 1914:

The special statute under which the appellant company was incorporated, Act of March 2, 1805, 4 Sm. Laws 216, provides that if the company shall neglect to keep its road in repair and information shall be made before a justice of the peace, he, the justice, shall issue a precept commanding a constable to summon "three dis-

interested freeholders," to meet at a certain time, of which notice shall be given to the company; and the justice shall by the oath of the said freeholders inquire of the condition of the road and shall cause an inquisition to be made, and if the road be found out of repair, a copy of the inquisition shall be sent to the gatekeepers and from thenceforth the collection of toll, upon the defective part of the road, shall cease until the road shall have been repaired. This proceeding was instituted, under said provision of the statute, and its object was to compel the company to open its toll gates, upon a part of the road, upon the allegation that the road was not in such "good and perfect order and repair" as by the statute it was required to be kept. The inquisition resulted in a finding, under the hands of the justice and all three of the freeholders, that the part of the road in question was out of order and repair, and this return was duly certified by the justice and served upon the proper officers of the defendant company. The turnpike company thereupon caused the record to be brought into the common pleas, upon certiorari, and filed many exceptions. The court below, after a hearing, overruled all the exceptions, and from that order the defendant appeals.

The paper-book of the appellant thus states the question involved in this appeal: "Justice overruled objection to competency of alleged disinterested freeholders and refused request to examine them under oath. Did this annul the proceeding?" This eliminates from the consideration of this appeal any question other than the manner in which the justice dealt with the objection of the turnpike company to the competency of the freeholders who participated in the inquisition. The record of the inquisition shows that upon formal complaint the justice duly issued to the constable his precept "to summon three disinterested freeholders" to meet at the time and place designated, and that the constable under oath, returned that he "had summoned three disin-

terested freeholders, namely, John S. Bomberger, Harry C. Kreider and George Bomgardner, to meet April 4, 1911, at 2 o'clock P. M.," as by the precept of the justice he was commanded. Due notice of the proceeding was given to the representatives of the company, in the manner by the statute provided. The justice and the three freeholders designated met at the place appointed, on April 4, 1911, at 2 o'clock P. M., and the defendant company was there and then represented by its counsel. The record of the objection made by the defendant company to the freeholders is as follows: "Whereupon said counsel for the said 'The President, Managers and Company of the Berks and Dauphin Turnpike Road' presents the objection that the appointed freeholders are not such as are required by the act of Assembly. Objection overruled by the said justice." This is all that is disclosed by the record as having occurred relating to any challenge or attempted challenge of the freeholders at the first meeting, when they convened for the purpose of entering upon the discharge of their duties. The statute contains no provision giving the right of challenge of the freeholders to either party, and it certainly cannot be contended that the defendant had any right to challenge upon any ground other than for cause shown. In a proceeding in the court of common pleas of Philadelphia county, under a statute containing similar provisions, Judge PAXSON who was then sitting in that court said: "The constable in the first instance determines the qualifications of the inquest. He is to summon 'three disinterested freeholders.' This return if properly made is prima facie evidence that they are such, and conclusive unless challenged for cause, and the contrary shown. In the latter case it would rest with the alderman to decide the challenge and pass upon the question of their qualifications. If they were not such persons as the precept commanded the constable to summon, it might, perhaps, be his duty to issue another precept, and have other persons who did

possess the qualifications summoned. In no event could the inquest sit in judgment upon the qualifications of its own members:" In re Complaint against the President, Managers and Company of the Frankford & Bristol Turnpike Road, 10 Phila. 59. In the present case the precept of the justice commanded the constable to summon three disinterested freeholders; the return of the constable, under oath, stated that he had summoned three disinterested freeholders, naming them. This was prima facie evidence of the competency of the persons summoned, the constable having officially certified to the fact that the three persons named were disinterested freeholders. This being so, it was incumbent upon the defendant company to do more than merely object to the freeholders, it must state the cause for challenge and at least offer to produce evidence to support it. When the justice was required to pass upon this question he had before him in favor of the competency of the members of the inquest the official return of the constable made under oath, and opposed to this he had merely the objection, of counsel, "that the appointed freeholders are not such as are required by the act of Assembly." This objection may have meant that the members of the inquest were not in fact freeholders, or it may have meant that they were not disinterested, and in the latter case the objection may have had for its foundation the mere fact that the men traveled the road occasionally and paid toll. The objection ought to have been made more specific; if there was a cause for the challenge the justice was entitled to know the nature of it. The defendant company could only challenge for cause and the cause ought to have been distinctly stated and an offer made to support it by evidence, at the time the justice was called upon to decide the question. When the justice was called to pass upon the question he had before him nothing to overcome the prima facie evidence of the official return of the constable, and ought not to be

convicted of error for overruling the objection. The decision of the justice that the persons summoned were disinterested freeholders was a finding of that fact by a tribunal competent to pass upon the question.

The inquest having been duly convened and sworn and the justice having overruled the objection to the competency of the freeholders, they proceeded to discharge the duties imposed upon them. After a witness on behalf of the informant had been duly sworn, "counsel for both parties having agreed to and requested such adjournment," the inquest adjourned, to April 7, 1911, at 2 o'clock P. M. The inquest met on April 7, 1911, at the hour and place designated and "It was then and there agreed by and between counsel for the complainant aforesaid and counsel for the said company that the testimony given by the witnesses before the inquest should be written down stenographically by C. Mabelle Dobbs, stenographer, and that her written notes or copy of such testimony should be taken to be the correct transcript of the testimony produced before the inquisition and to have the same force and effect as if written down by the members thereof personally." This was clearly a recognition of the inquisition as an organized body, but that fact had already been established by the proceedings at the first meeting. After all this the defendant company requested permission to examine the said freeholders as to their interest and competency. This was objected to and the justice sustained the objection. We are of opinion that the defendant company were not at that time entitled to examine the freeholders, for the following reasons. The competency of the freeholders to act had been passed upon by the justice at the first meeting of the inquest and if the defendant company had desired to produce evidence bearing upon that question, such evidence ought to have been presented at that time. The justice having passed upon the question and the inquest having proceeded to the discharge of its duty, it was

too late at the second meeting to demand the right to examine the freeholders, without at least stating some good reason for .the delay: Wenrick v. Hall, 11 S. & R. 153; Eakman v. Sheaffer, 48 Pa. 176; Comfort v. Mosser, 121 Pa. 455; Com. v. Evans, 212 Pa. 369.

The judgment is affirmed.